UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KRUEGER INTERNATIONAL, INC.,

        Plaintiff,

  v.                                               Case No. 05-C-563

ROYAL INDEMNITY COMPANY,

        Defendant.

**DECISION AND ORDER**

      This diversity action arises out of a dispute between plaintiff Krueger International, Inc. (KI), and its insurer, Royal Indemnity Company (Royal) over whether Royal is required to indemnify KI for a judgment entered against KI in Wisconsin state court under the Employment Practices Liability coverage of its policy. In the state court case, four former KI employees sued KI for failing to pay them the full value they claimed they were entitled to for company stock KI elected to buy back from them after they left the company. The four high-ranking KI employee-shareholders had retired or resigned in December 2000. They were each party to a shareholder agreement which provided that upon their retirement or voluntary resignation, KI had the option to redeem their company shares at the value of the stock as appraised upon the last day of the calendar quarter ending on or immediately preceding the date KI gave written notice it would exercise its option. In other words, under the agreement, once KI gave notice that it was exercising its option to redeem the employees' shares, it had to pay the share price fixed on the last day of the previous quarter.

Each of the four employees claimed that prior to resigning, he spoke with Mark Olsen, Krueger's chief financial officer, treasurer and a member of the board of directors. Each claimed that Olsen individually told them that if they resigned prior to December 31, their stock would be redeemed at its value at the end of the third quarter, $21.16 per share. When the employees left the company in December 2000, however, KI did not immediately give notice that it was exercising its option to purchase their shares. Instead, it waited to do so until the next month–January 2001–which meant that under the shareholders' agreement KI was to calculate the price of the shares based on the share price from the last day of the previous quarter, i.e., December 31, 2000. This resulted in a substantial savings to the company (and corresponding loss to the shareholders) because the share price on December 31, 2000 was much lower than it had been on September 30, the last day of the previous quarter.

In their lawsuit against KI, the four former employees asserted five causes of action: breach of contract for failure to value the stock at the September 30, 2000 valuation date; breach of contract for KI's alleged purposeful deflation of the stock price; promissory estoppel; strict responsibility misrepresentation; and negligent misrepresentation. Prior to trial, the state court granted KI's motion for summary judgment on all of the claims except the claim that KI had breached the shareholder agreement by failing to value the stock at the September 30, 2000 price. The case was tried on the theory that the representations made by Olsen to the plaintiffs constituted a modification of the shareholder agreement and that KI had breached the agreement, as modified, by failing to pay the third quarter price for the stock. The jury concluded that Olsen possessed the authority to bind the company and found for the plaintiff shareholders. The jury awarded as damages the difference between the third quarter and fourth quarter stock price, which totaled some $4,000,000.

Shortly after the former employees commenced their lawsuit, KI tendered the claim to Royal, claiming it was covered under the Employment Practices Liability portion of its policy. Royal acknowledged an obligation under its policy to defend KI from the employee lawsuit and undertook the defense under a reservation of rights. Royal has from the beginning, however, denied coverage for the loss alleged. In the instant suit, KI claims it is entitled to indemnification for the amount of the state judgment entered against it, less its retention. The case is now before me on cross-motions for summary judgment. For the reasons stated below, Royal's motion will be granted and KI's denied.

## ANALYSIS

Summary judgment is proper when there are no outstanding issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Both parties agree that there are no outstanding factual disputes wanting of resolution. Instead, the dispute is based on the application of the policy language to the undisputed facts. Royal asserts that the EPL policy is clear and that KI cannot establish that any "Loss" was caused by any "Employment Wrongful Act," both of which are terms defined in the policy. It also argues that even if coverage would otherwise exist, two exclusions apply to preclude coverage for KI's claim. I agree with Royal that there was no "Employment Wrongful Act" and thus find no need to address the exclusions Royal claims also apply. Before setting forth my analysis, I will briefly recount the principles of Wisconsin law that must govern my determination of the issue.

Under Wisconsin law, insurance contracts should be interpreted in order to effect the true intent of the parties and the extent of policy coverage. *Limpert v. Smith*, 203 N.W.2d 29, 30 (1973).

3

The court should also consider the purpose and subject matter of the insurance. *Danbeck v. American Family Mut. Ins. Co.*, 629 N.W.2d 150, 154 (Wis.2001). The clear and unambiguous language of the policy is to be given the plain and ordinary meaning that would be understood by a reasonable person in the position of the insured. *General Cas. Co. v. Hills*, 561 N.W.2d 718, 722 (Wis. 1997). If a policy is clear and unambiguous on its face, the terms of that policy should not be rewritten by construction to bind an insurer to a risk it never contemplated and for which premiums were never paid. *Gonzalez v. City of Franklin*, 403 N.W.2d 747, 752 (Wis.1987). But if the policy language is ambiguous, coverage should be resolved in favor of the insured. *Smith v. Atlantic Mut. Ins. Co.*, 456 N.W.2d 597, 598 (1990). Whether a contract is ambiguous is a question of law. *Golden Valley Supply Co. v. American Ins. Co.*, 537 N.W.2d 58, 62 (Ct.App.1995). Words or phrases in a contract are ambiguous only when they are "reasonably or fairly susceptible to more than one construction." *Stanhope v. Brown County*, 280 N.W.2d 711, 722 (1979).

With these principles in mind, I now turn to the specific language of the policy before me and the arguments of the parties. The insuring clause for the Employment Practices Liability coverage under the policy issued by Royal to KI states:

> ... the insurer shall pay on behalf of the **Insureds Loss** resulting from **Claims**, other than **Class Actions**, first made during the **Policy Period** against the Insureds for **Employment Wrongful Acts**.

(Olsen Aff., Ex. A at 22.) Each of the above terms that appear in bold type are specifically defined by the policy. The term "**Loss**" means "the total amount which the **Insured Persons** are legally obligated to pay on account of any **Claim** made against them for **Employment Wrongful Acts** ... including . . . judgments . . . . " (*Id.* at 26.) "**Employment Wrongful Act**" means:

4

> any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by the Company or one or more Insured Persons in their capacities as such, in connection with any actual or alleged wrongful dismissal, discharge or termination of employment, breach of any oral or written employment contract or quasi-employment contract, employment-related misrepresentation, violation of employment discrimination laws (including sexual or other illegal workplace harassment), wrongful failure to employ or promote, wrongful discipline, wrongful deprivation of a career opportunity, failure to grant tenure, failure to adopt adequate work place or employment policies and procedures, illegal retaliatory treatment, negligent evaluation, invasion of privacy, employment-related defamation or employment-related wrongful infliction of emotional distress.

(*Id.* at 25.)

There is no doubt that KI suffered a loss, as that term is commonly understood, as a result of the judgment entered against it in the state court action. But it is not a "loss" covered by the policy unless it was caused by an "Employment Wrongful Act." Royal argues that because the judgment entered against KI was based solely on breach of contract and simply required KI to pay what it was contractually obligated to pay, no loss within the meaning of the policy occurred. In essence, Royal argues, a contractual obligation is not a Wrongful Employment Act. (Royal SJ Brief at 9-10.) In support of its argument, Royal cites the general rule that liability insurance does not usually cover damages for breach of contract. According to one commentator Royal cites:

> [e]ven in the absence of an express exclusion, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no "wrongful act" and no "loss" since the insured is simply being required to pay an amount it agreed to pay.

Eric Mills Holmes, *Holmes' Appleman On Insurance* 2d § 146.6 (2003).

The rule that breach of contract damages are not recoverable under a liability policy makes sense, Royal argues, because otherwise a party would be free to ignore his contractual obligations with impunity, knowing that his liability insurer would be there to pick up the tab. In *Waste*

5

*Corporation of America, Inc. v. Genesis Insurance Company*, 382 F. Supp.2d 1349 (S.D. Fla. 2005), a case on which Royal heavily relies, the court explained the reason for the rule:

> Allowing an insured to control whether it will be covered for its act of breaching a contract places the insured in the unique posture of voluntarily choosing to do some act for which he knows an insurance company will compensate him even if he chooses wrongly. Who wouldn't buy insurance if he could decide whether to perform or decline to perform some act which would give him coverage for that action? Such a premise eliminates all risk to a potential insured. He could enter into a contract safe in the assumption that if he later decides to engage in an act which might be considered a breach, the insurance company will step forward to cover the consequences of his act if he was wrong; and if he was right, he still walks away with no consequence to himself. Such a practice is inimical to the entire concept of insurance.

382 F. Supp.2d at 1354-55.

Judge Posner voiced the same concern in *May Department Stores Co. v. Federal Insurance Co.*, 305 F.3d 597 (7th Cir. 2002), in rejecting a claim by the administrator of an ERISA plan that it's liability for benefits due under the plan was covered by an executive protection liability insurance policy:

> It would be passing strange for an insurance company to insure a pension plan (and its sponsor) against an underpayment of benefits, not only because of the enormous and unpredictable liability to which a claim for benefits on behalf of participants in or beneficiaries of a pension plan of a major employer could give rise, but also because of the acute moral hazard problem that such coverage would create. ("Moral hazard" is the term used to denote the incentive that insurance can give an insured to increase the risky behavior covered by the insurance.) Such insurance would give the plan and its sponsor an incentive to adopt aggressive (just short of willful) interpretations of ERISA designed to minimize the benefits due, safe in the belief that if, as would be likely, the interpretations were rejected by the courts, the insurance company would pick up the tab. Heads I win, tails you lose.

305 F.3d at 601. Royal contends that KI's position is essentially the same as that of the insureds in *Waste Corp.* and *May Dept. Stores*. KI, through Olsen, entered into an agreement with the shareholder-employees as to when their stock would be valued and then refused to pay them what

6

it had promised. A judgment ordering KI to pay what it had promised, Royal argues, does not constitute a loss caused by an "employment wrongful act." It is "not a loss due to negligence or other unforeseen event," Royal contends, but an obligation KI "voluntarily agreed to take on."

KI argues in response, however, that the conduct for which it claims insurance coverage is not its own breach of contract, but rather the act that gave rise to the contractual obligation. According to KI, the "employment wrongful act" was Olsen's misstatement regarding how KI would value the departing employees' stock:

> An employment wrongful act therefore occurred because Olsen made an "error, misstatement, misleading statement, act, omission, and breach of duty" which was "in connection with . . . [the] termination of [the] employment" of the state court Plaintiffs. . . . KI incurred a $5.3 million loss, not because the company breached the written shareholder agreements, but because of Olsen's conduct in dealing with departing employees. Olsen's mistakes in communicating with those employees increased the amount KI paid for the stock, thereby leading to this loss.

(KI Response at 18.)

But Olsen's statement that KI would pay the third quarter price for the employee-shareholders' stock, at least according to the jury verdict, was not an "error, misstatement, misleading statement, act, omission, or breach of duty" made or performed "in connection with an "actual or alleged wrongful dismissal, discharge or termination of employment." Instead, it was a statement of intent that the state jury found sufficient to contractually bind KI. The jury found that Olsen had agreed with the departing employees to modify the shareholder agreement by committing the company to redeem their stock at the third quarter price if they resigned before the end of the year. And while Olsen and KI may have later regretted his making it, there is nothing wrongful about it. To the contrary, Olsen's statements actually entitled the departing employees to more money than they would otherwise have received, not less. A promise to pay a higher price for the

7

company stock of departing employees is simply not an "employment wrongful act" within the meaning of the policy.

In sum, whether one views KI's loss as resulting from its breach of contract or Olsen's statements concerning how the company would value the departing employee's stock, there is no coverage. Neither constitutes an "employment wrongful act" as that term is defined by the policy. Accordingly, Royal's motion for summary judgment is GRANTED and KI's motion for summary judgment is DENIED.

**SO ORDERED** this   19th   day of May, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
